**E-FILED**

NOV 1 3 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:                                No. 06-04250 SBA

ROBERT C. THOMAS,                     **ORDER**

      Debtor-Appellant.

_____/

    Debtor-appellant Robert C. Thomas appeals from an order entered by the United States Bankruptcy Court for the Northern District of California, denying Thomas' Motion for Damages for Violation of the Automatic Stay.

    Having read and considered the papers submitted, including the record on appeal from the Bankruptcy Court, and being fully informed, the Court AFFIRMS the Bankruptcy Court's order in part, and REMANDS in part for further consideration.

**BACKGROUND**

    The essential facts of this case are not in dispute.

    On May 23, 2005, Thomas voluntarily filed *pro se*[1] for Chapter 13 bankruptcy protection in Bankruptcy Court, Case No. 05-31615. Thomas' Appendix, Excerpts of the Record, at 12-14 (hereinafter "Record"). Prior to filing for bankruptcy, a number of parking tickets were issued to Thomas by the San Francisco Department of Parking and Traffic (hereinafter "DPT"), which were not paid. On May 20, 2005, the DPT towed his car for being illegally parked. Record at 80, ¶ 2. Between May 23 and May 25, 2005, Thomas attempted to retrieve his car from the impound yard. Record at 80-81, ¶ 4-6. The city refused to return his car due to the unpaid parking tickets.

    On May 31, 2005, Thomas filed a Motion in Bankruptcy Court, asking the court to hold the DPT in contempt for failure to stop collection efforts after he filed for bankruptcy. Record at 82-83

_____

[1]Thomas has since retained counsel.

I hereby certify that the annexed instrument is a true and correct copy of the original issued in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California

By _____
    Deputy Clerk

NOV 1 3 2006

Entered on Civil Docket

NOV 2 0 2006

1    Thomas alleged that the City's refusal to release his car constituted a violation of the automatic stay

2    imposed pursuant to filing for bankruptcy protection. The City subsequently released the vehicle to

3    Thomas after it became clear that the unpaid parking citations were included in the Chapter 13 Plan

4    and the City received instructions from Thomas' trustee to release the vehicle. In exchange for the

5    release of the vehicle, Thomas signed a release and waiver of claims and withdrew his Motion for

6    Contempt. Record 65, 170-72.

7         On June 16, 2005, Thomas applied for and was denied a neighborhood parking permit

8    because of the unpaid parking tickets. Record at 81-82, ¶ 11. On July 14, 2005, Thomas received

9    his vehicle registration notice from the California Department of Motor Vehicles (hereinafter

10   "DMV"). The DMV demanded payment of all outstanding parking tickets which totaled $2,254, of

11   which $1,600 were incurred prior to the filing of his bankruptcy petition ("prepetition").[2] Record at

12   82, 94.

13        On September 23, 2005, Thomas' Chapter 13 Plan was confirmed by U.S. Bankruptcy Judge

14   Dennis Montali. Record at 68-69.

15        On October 21, November 28, 2005, and January 30, 2006, Thomas received collection

16   notices from the City and its collection agency, LDC Collection Systems, demanding payment of

17   prepetition parking fines. Record at 91-102. Further, on January 3, 13, and 23, 2006, and on March

18   24, 2006, Thomas's car was ticketed for failure to have a valid registration. Record at 83-84, ¶ 19-

19   20. On March 13, 2006, the California Franchise Tax Board (hereinafter "FTB") sent Thomas a

20   Demand for Payment, threatening to attach bank accounts, garnish wages, or seize and sell his real

21   or personal property if he failed to pay the full amount due for registration fees, parking violations

22   (including prepetition tickets), and other penalties. Record at 115.

23        On March 29, 2006, Thomas filed a Motion for Damages for Violation of the Automatic Stay

24   in Bankruptcy Court, naming the DPT, the DMV, and the FTB (hereinafter "Appellees"), as

25   defendants. Record at 70-79. On May 12, 2006, a hearing on the Motion was held in Bankruptcy

26   Court, see Record at 223-264, and the Motion was denied on May 23, 2006. Record at 173. The

27   ───────────────────

28        [2]Subsequent to filing for bankruptcy protection, Thomas received an additional fourteen
     parking tickets. Record at 163.

Case: 05-31615    Doc# 70    Filed: 11/13/06    Entered: 11/27/06 09:37:24    Page 2 of 14

United States District Court

For the Northern District of California

1    Bankruptcy judge held that the withholding of permits and the vehicle registration fell within the

2    "police powers exception" to the automatic stay. Record at 253. The judge also held that the FTB's

3    assertion of a lien on the vehicle was protected by the exception. Record at 253. The Bankruptcy

4    judge held that the question of whether the collection letters sent by the FTB violated the automatic

5    stay was a "close call." Record at 253. However, the judge ruled that the agency had not actually

6    attempted to collect a monetary judgment, and thus the line drawn by the automatic stay provision

7    was not crossed. The judge stated that, until "there is a garnishment or there is a levy," the stay was

8    not violated, as the governmental agencies were acting within their regulatory authority. Record at

9    262.

10       Thomas subsequently filed a notice of appeal. Record at 174. On June 19, 2006, the FTB

11   elected to have the instant appeal heard by the United States District Court rather than by the

12   Bankruptcy Appellate Panel. Record at 176.

13   **JURISDICTION AND STANDARD OF REVIEW**

14       This Court has jurisdiction over the appeal of the Bankruptcy Court's ruling on the automatic

15   stay pursuant to 28 U.S.C. § 158(a)(1). *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.

16   1990) (holding that a ruling on the automatic stay is final for purposes of appeal). The Court

17   reviews the bankruptcy court's legal conclusions de novo and its factual determinations for clear

18   error. *Nielson v. Chang (In re First T.D. & Inv. Inc.)*, 253 F.3d 520, 526 (9th Cir. 2001).

19       The applicability of the automatic stay and exceptions thereto are questions of law that the

20   Court considers de novo. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005) (citations

21   omitted). Findings of fact are clearly erroneous when, "although there is evidence to support it, the

22   reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

23   been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

24

25

26

27

28   **DISCUSSION**

3

1      Two issues are presented in this appeal.[3]  First, Thomas argues that the City of San

2 Francisco, the DMV, and the FTB violated the automatic stay provisions of 11 U.S.C. § 362(a) by

3 (1) denying him a residential parking permit and annual vehicle registration on account of unpaid,

4 dischargeable, prepetition parking citations, and (2) by sending dunning letters[4] and collection

5 notices, post-petition.  On account of these alleged violations, Thomas contends that he is entitled to

6 damages, costs, and attorneys fees, as well as punitive damages, pursuant to 11 U.S.C. § 362(k)(1)[5].

7 Appellees contend that all of their actions fall within the "police and regulatory powers" exception

8 under 11 U.S.C. § 362(b)(4), or the "perfection of a lien" exception under 362(b)(3).  The

9 bankruptcy court agreed with Appellees' contentions and denied Thomas' motion, holding that all of

10 the alleged violations of the automatic stay fell within the two exceptions.

11      The second issue is whether the City's denial of Thomas' neighborhood parking permit and

12 the State's denial of Thomas's vehicle registration violated the non-discrimination provision of the

13 Bankruptcy Code.  Section 525 of the Bankruptcy Code protects debtors from various forms of

14 discrimination based upon the filing of a bankruptcy case.  This issue was raised by Thomas for the

15 first time in his brief to this Court.  However, this issue is in the record before this Court because it

16 was raised in the City's opposition brief before the Bankruptcy Court.  Record at 158-59.  Both

17 Thomas and the City have briefed this issue in the instant appeal.

18

19 **I.      The Automatic Stay Provision under 11 U.S.C. § 362(a)**

20

---

21     [3] The DMV and the FTB reiterate their objection to the form of Thomas's motion for
damages for violation of the automatic stay, on the grounds that the proper procedure for raising this
22 matter is in an "Adversary Proceeding" brought under Bankruptcy Rule 7001. The Bankruptcy Court
ruled that the matter was properly raised by motion, because a claim under 362(h) can be raised
23 either by motion or by complaint. Record at 225. "A sanctions request for willful violation of the
automatic stay is not included within the Rule nor can it be logically implied within Bankruptcy
24 Rule 7001 proceedings." In re Zumbrun, 88 B.R. 250, 252 (9th Cir. BAP 1988). This Court affirms
the Bankruptcy Court's holding that Thomas may proceed by way of motion.
25

26     [4] A dunning letter is a demand for payment from a delinquent debtor.  Black's Law
Dictionary, 6th Ed. 1990.

27     [5] "Except as provided in paragraph (2), an individual injured by any willful violation of a
stay provided by this section shall recover actual damages, including costs and attorney fees, and, in
28 appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

Case: 05-31615     Doc# 70     Filed: 11/13/06     Entered: 11/27/06 09:37:24     Page 4 of 14

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    Section 362(a) provides, in relevant part, that

2    [A] petition filed under section 310, 302, or 303 of this title . . . operates
     as a stay, applicable to all entities, of
3        (4) any act to create, perfect, or enforce any lien against property
     of the estate;
4        (5) any act to create, perfect, or enforce against property of the
     debtor any lien to the extent that such lien secures a claim that arose
5    before the commencement of the case under this title;
         (6) any act to collect, assess, or recover a claim against the debtor
6    that arose before the commencement of the case under this title.

7    11 U.S.C. § 362(a)(4)-(6).  Thomas asserts that the City and State's joint collection efforts and denial

8    of his parking permit application and his annual vehicle registration constituted an "act to collect,

9    assess, or recover a claim against the debtor that arose before the commencement of the case," and

10   thus violated the automatic stay provision.

11       The parties do not present any substantive argument as to whether or not the automatic stay

12   was violated, instead focusing on whether exceptions to the automatic stay are applicable.  *See*

13   Thomas' Brief at 1-2; Appellees' Brief at 5-6 (stating issues presented on appeal).  Accordingly,

14   whether the City and State's actions violated the automatic stay is not before this Court.  The Court

15   will only evaluate whether any exception to the automatic stay applied.

16   **II.    "Police and Regulatory Powers" Exception**

17       Appellees argue that all of their actions fall within the "police and regulatory powers"

18   exception to the automatic stay.  11 U.S.C. § 362(b)(4).  The Court agrees.

19       **1.    Background**

20       The automatic stay serves two important purposes.  "By halting all collection efforts, it gives

21   the debtor a breathing spell from his creditors during which the debtor can try to reorganize.  By

22   preventing creditors from pursuing, to the detriment of others, their own remedies against the

23   debtors' property the stay protects creditors."  *In re Dawson*, 390 F.3d 1139, 1147 (9th Cir. 2004)

24   (quoting *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993)).  The legislative

25   history of Section 362 clearly shows that Congress intended to stop "all collection efforts, all

26   harassment, and all foreclosure actions."  *See* H.R. Rep. No. 95-595, 95th Cong., 2d Sess. (1978),

27   *reprinted in* 1978 U.S.C.C.A.N. at 6296-97; *see also Delpit v. Commissioner*, 18 F.3d 768, 771 (9th

28   Cir. 1994).

Case: 05-31615    Doc# 70    Filed: 11/13/06    Entered: 11/27/06 09:37:24    Page 5 of 14

United States District Court

For the Northern District of California

1    However, the Bankruptcy Code makes exceptions to the automatic stay in situations where

2    other interests outweigh these goals.  These Congressionally created exceptions are listed in 11

3    U.S.C. § 362(b).  For example, criminal proceedings and actions to establish child support orders are

4    exempt from the stay.  11 U.S.C. § 362(b)(1).

5    At issue in this appeal is the "police and regulatory powers" exception, which exempts from

6    the automatic stay "the commencement or continuation of an action or proceeding by a

7    governmental unit . . . to enforce such governmental unit's or organization's police and regulatory

8    power, including the enforcement of a judgment other than a money judgment, obtained in an action

9    or proceeding by the governmental unit to enforce such governmental unit's or organization's police

10   or regulatory power." 11 U.S.C. § 362(b)(4).  "The theory of the exception is that bankruptcy should

11   not be 'a haven for wrongdoers.'" *In re Universal Life Church*, 128 F.3d 1294, 1297 (9th Cir.1997)

12   (citations omitted).  *See also United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3rd Cir. 1988)

13   ("Congress recognized . . . that the stay provision was particularly vulnerable to abuse by debtors

14   improperly seeking refuge under the stay in an effort to frustrate necessary governmental

15   functions.").

16   While governmental agencies proceeding pursuant to the police and regulatory powers

17   exception may prosecute their actions up to and including a judgment, they cannot enforce or collect

18   money judgments without bringing a claim for that amount into the bankruptcy proceeding. *See* 11

19   U.S.C. § 362(b)(5).  Thus, in this Circuit the tension between the two policies contained within the

20   Bankruptcy Code is reconciled by allowing prosecution up to and including judgment, but not

21   permitting collection without first obtaining relief in the Bankruptcy Court. *See NLRB v.*

22   *Continental Hagen Corp.*, 932 F.2d 828, 832 (9th Cir. 1991).

23   Courts interpreting the police and regulatory powers exception generally use two tests to

24   determine whether governmental agency action falls within the exception: the "pecuniary purpose"

25   test and the "public policy" test. *In re Universal Life Church*, 128 F.3d at 1297; *City & County of*

26   *San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1123-24 (9th Cir. 2005). "Under the pecuniary

27   purpose test, the court determines whether the government action relates primarily to the protection

28   of the government's pecuniary interest in the debtor's property or to matters of public safety and

6

**United States District Court**
For the Northern District of California

1    welfare." *PG&E Corp.*, 433 F.3d at 1125. "If the action primarily seeks to protect the government's

2    pecuniary interest, the automatic stay applies. If the suit primarily seeks to protect the public safety

3    and welfare, the automatic stay does not apply." *Id.* at 1124. The public policy test distinguishes

4    between government actions that effectuate public policy and those that adjudicate private rights. *In*

5    *re Universal Life Church*, 128 F.3d at 1297.

6          The Ninth Circuit has stated that an action must meet "either" test. *Id.* The parties in this

7    case agree that the "pecuniary purpose" test is at issue. In applying the pecuniary purpose test, the

8    Court must look to the government's specific acts and determine whether their execution would

9    result in an economic advantage to the government over third parties in relation to the debtor's

10   estate. *City & County of San Francisco v. PG&E Corp.*, 433 F.3d at 1124 (quoting *In re Charter*

11   *First Mortgage, Inc.*, 42 B.R. 380, 382 (Bankr. D. Or. 1984)).

12          2.    **Analysis**

13          Thomas argues that the actions taken by the City and State do not fall within the police and

14   regulatory powers exception because they sought primarily monetary relief, and were "primarily [to]

15   advance the government's pecuniary interests." Thomas' Opening Brief at 11. Thomas concedes

16   that the parking violation fines "may have been imposed originally in the exercise of the City's

17   police and regulatory powers." However, he contends that the post-petition governmental actions of

18   denying his application for a residential parking permit, sending collection letters, denying his

19   vehicle registration, and threatening levy, garnishment, and seizure were not proper exercises of

20   police powers under the exception. Thomas' Opening Brief at 9.

21          Thomas alleges that the primary purpose of Appellees' actions was to coerce payment of the

22   unpaid tickets ahead of all other creditors, outside the bankruptcy plan, and outside of the

23   bankruptcy court. Reply Brief at 7, 11. Specifically, Thomas references the collection notices he

24   received on October 21, 2005, and November 28, 2005, demanding payment for prepetition tickets

25   from LDC Collection Systems, the collection agency of DPT. Record at 83, ¶¶ 18, 96, 98. These

26   notices state, "[t]his is an attempt to collect money owed." Record at 96, 98. Further, the renewal

27   notice from the DMV dated July 14, 2005, made a demand for payment of unpaid fines before the

28   registration could be renewed. Record at 82, ¶ 14. A subsequent delinquency notice from the DMV

7

1  stated, "[t]o prevent collection action by the Franchise Tax Board (FTB), you must respond to this

2  notice immediately. FTB may garnish your wages, attach your bank account, attach real property

3  you own, or seize and sell your real property." Record at 109, 111. In addition, Thomas points to

4  the FTB "Demand For Payment" Notice, dated March 13, 2006. Record at 115. In this letter, the

5  FTB cautioned, "[y]ou must pay the full amount due or provide evidence that you are not required to

6  pay. If you do not respond within 10 days of the date of this notice, we will pursue any of the

7  following collection actions without further notice: attach your bank account; garnish your wages or

8  other sources of income; seize and sell your real or personal property; file a lien to attach all real

9  property you now own or may later acquire in California." Record at 115. Finally, Thomas argues

10  that the primary purpose of the City's denial of his neighborhood residential parking permit

11  application was to coerce him into paying the prepetition and dischargeable fines.

12      Thomas cites *In re Del Mission Ltd.*, 998 F.2d 756, 758 (9th Cir. 1993) which, he contends,

13  stands for the proposition that "merely making a demand for payment violates the stay." Reply Brief

14  at 7. However, that case did not consider whether the police power exception, or any other

15  exception, was applicable. The question here is whether, assuming the stay was violated, an

16  exception to the stay applied. Thus, *In re Del Mission* has no bearing on this case.

17      Thomas also relies on two out-of-circuit district court cases: *In re Colon*, 102 B.R. 421

18  (Bankr. E.D. Pa. 1989), where the Bankruptcy Court held that the state's action in suspending a

19  driver's license for failure to pay fines imposed for prepetition violations did not fall within the

20  police and regulatory powers exception, and *In re Adams*, 106 B.R. 811 (Bankr. D. N.J. 1989),

21  where the Bankruptcy Court held that the state's denial of a driver's license did not fall within the

22  exception.

23      *In re Colon* is an early statement of the "pecuniary purpose" test. It held that, "[i]f state law

24  mandates the suspension or revocation of driving privileges due to the nature of the infraction or the

25  driver's history of traffic violations, irrespective of whether the driver promptly pays a fine, the

26  bankruptcy code will not interfere with the exercise of this police power. That is, the automatic stay

27  does not preclude the state from removing unsafe drivers from the roads. Conversely, the code does

28  prevent the state from utilizing its power to suspend driving privileges in order to collect its fines."

8

United States District Court
For the Northern District of California

1  *In re Colon*, 102 B.R. at 428.  In other words, if the state's purpose is primarily pecuniary, then the

2  stay applies, but if the state action has a legitimate police or regulatory purpose, then it falls within

3  the exception.  The court held that the Traffic Court had "embarked upon a deliberate pattern to

4  collect the assessed fines," and the actions thereby became primarily pecuniary. *In re Colon*, 102

5  B.R. at 428.

6       *In re Colon* is distinguishable from this case because the City and State's actions against

7  Thomas were not simply a mechanism to collect outstanding fines, but rather a way of preventing

8  Thomas from creating further public safety problems by continuing to park illegally.  Further, the

9  decision in *In re Adams* was based on the fact that the statute at issue involved a system of civil

10  penalties, not a valid exercise of police and regulatory powers.  In this case, the governmental

11  activities at issue were in furtherance of legitimate police powers – enforcing parking and traffic

12  laws – not merely a system of civil penalties.

13       Appellees' actions fall within the "police and regulatory powers" exception of section

14  362(b)(4), because parking and traffic laws are "laws affecting health, welfare, morals, and safety."

15  *See Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 591 (9th Cir. 1993) (holding

16  that the term "police and regulatory power" refers to the enforcement of state laws affecting health,

17  morals, and safety). *See also Friedman v. City of Beverly Hills*, 47 Cal. App. 4th 436, 446 (1996)

18  (noting that the California Vehicle Code permits local authorities to prohibit or restrict parking, "a

19  legitimate exercise of regulatory police power").  Parking laws promote the safe and efficient flow of

20  traffic through the City, and thus protect the health and safety of City residents. *See Homes on

21  Wheels v. City of Santa Barbara*, 119 Cal. App. 4th 1173, 1178 (2004) (holding that parking

22  restrictions were not arbitrary, and were thus valid exercise of municipal police power, where

23  necessary for health and safety reasons).  For example, as Appellees point out, parking restrictions

24  prohibiting street parking during street cleaning hours are designed to ensure that garbage and

25  harmful debris, such as broken glass, are removed from City streets and gutters.[6]  Rules against

26  parking in front of fire hydrants or in areas reserved for emergency vehicles ensure that essential

27  
28  [6] Appellees state that Thomas has received seventeen parking citations for violating street
cleaning parking restrictions.  Appellees' Brief at 7.

9

United States District Court

For the Northern District of California

1    services can be delivered.  The prohibition on parking along busy thoroughfares is designed to

2    alleviate traffic congestion, which causes noise and air pollution.  The City's regulations requiring

3    the curbing of wheels to prevent runaway vehicles are intended to prevent injuries to persons or

4    property.

5          The Court agrees with Appellees.  The legislative history of the police and regulatory powers

6    exception and relevant case law demonstrate that the government may validly act to protect public

7    safety, even if there is a monetary component to the government's actions.  *See* H.R. Rep. No. 95-

8    595, at 343 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6299 (explaining that the police and

9    regulatory powers exception applies to suits "to prevent or stop" a harm and also to suits "attempting

10   to fix damages for violation" of the laws).  *See also In re Universal Life Church*, 128 F.2d at 1298

11   (holding that the exception applies to suits to determine a federal income tax exemption); *In re PMI-*

12   *DVM Real Estate Holdings, LLP*, 240 B.R. 24, 30 (Bankr. D. Ariz. 1999) (holding that the exception

13   may apply even to acts by governmental units to obtain possession of property of the bankruptcy

14   estate or to exercise control over bankruptcy estate property); *NLRB v. Twin Cities Elec.*, 907 F.2d

15   108 (9th Cir. 1990) (holding that the exception applies to suits to enforce federal labor laws); *Wade*

16   *v. State Bar of Arizona*, 948 F.2d 1122 (9th Cir. 1991) (holding that the exception applies to state bar

17   disciplinary proceedings against an attorney); *EEOC v. McLean Trucking*, 834 F.2d 398, 402 (4th

18   Cir. 1987) (allowing an EEOC action for back wages on behalf of debtor's employees to proceed

19   under the exception).

20         Thus, the ticketing of Thomas's vehicle and subsequent attempts to enforce these citations

21   and fines was an application of police and regulatory power.[7]  The Court is persuaded that Appellee's

22   activities were not primarily for pecuniary purposes.  The monetary fines sought by the City of San

23   Francisco and the referral to the DMV pursuant to state law,[8] the DMV's refusal to renew Thomas'

24

25         [7] Further, Appellees were required to send collection notices to Thomas by state and local
26   law.  *See* Record at 258.  Additionally, Appellees contend that they did not make any affirmative
     attempt to collect the monetary judgement by filing any kind of civil action and, therefore, they did
27   not violate the automatic stay.  Because the Court finds that the police and regulatory powers
     exception to the automatic stay applies, it need not reach this argument.

28         [8] California Vehicle Code § 40220.

10

1   vehicle registration pursuant to state law,[9] and the subsequent perfection of a lien on Thomas'

2   vehicle by the FTB were attempts by governmental units to punish past wrongs.  Under the

3   exception, governmental agencies are entitled to seek civil penalties and fines for conduct that

4   violates the law.   *In re First Alliance Mortgage Co.*, 264 B.R. 634, 649 (C.D. Cal. 2001).  Under

5   the "pecuniary purpose" test, governmental action is subject to the stay only when the agency is

6   acting to further a narrow pecuniary interest, such as seeking restitution of money wrongfully

7   obtained from the government. *Id.* at 646.  The agency is not barred when it merely attempts

8   through the imposition of fines to punish wrongful conduct. *Id.* at 649.

9         Thus, the City and State's actions fell within the police powers exception of § 362(b)(4).  The

10  Bankruptcy Court's holding to that effect is AFFIRMED.

11  **III.   "Acts to Perfect Certain Interests in Property" Exception**

12        The Bankruptcy Court held that the City's collection efforts and the notices of the lien held

13  by the FTB and perfected on Thomas' vehicle also fell within another exception: section 362(b)(3),

14  which exempts from the automatic stay "any act to perfect, or to maintain or continue the perfection

15  of, an interest in property to the extent that the trustee's rights and powers are subject to such

16  perfection under section 546(b)." *See* Record at 253.  Section § 546(b) provides, in relevant part,

17  that a trustee's rights and powers are subject to any generally applicable law that: "provides for the

18  maintenance or continuation of perfection of an interest in property to be effective against an entity

19  that acquires rights in such property before the date on which action is taken to effect such

20  maintenance or continuation."

21        This exception permits a creditor to perfect a lien against a debtor without violating the

22  automatic stay, if there is a state law providing for (1) maintenance or continuation of perfection of a

23  lien on property (2) that is effective against a lienholder (3) who obtains an interest in the property

24  before action is taken to maintain or continue perfection. *In re Hayden*, 308 B.R. 428, 432 (9th Cir.

25  BAP 2004).

26        The state law relevant here, California Vehicle Code § 9800(a)(5), provides that payments

27

28        [9] California Vehicle Code § 4760.

11

Case: 05-31615    Doc# 70    Filed: 11/13/06    Entered: 11/27/06 09:37:24    Page 11 of 14

United States District Court
For the Northern District of California

1  for parking-related penalties required to register a vehicle constitute a lien on the vehicle. The lien

2  is perfected when notice is mailed to the owner of the vehicle and the lien is recorded on the DMV's

3  electronic vehicle registration records. *See* Cal. Vehicle Code § 9800(d).

4      Thomas' pre-petition failure to pay parking tickets as required to register his vehicle gave rise

5  to a lien on his vehicle as set forth under the statute described above. Accordingly, the lienholder

6  (the State of California) acquired an interest in Thomas' property (his vehicle) before action was

7  taken to perfect the lien. The lien was apparently perfected after Thomas filed his bankruptcy

8  petition, as the DMV's vehicle registration notice demanding payment of outstanding parking tickets

9  was issued in July 2005 (Thomas filed for bankruptcy in May 2005). The DMV's post-petition

10 refusal to register Thomas' vehicle, the City's issuance of tickets for failure to have a valid

11 registration, and the FTB's demand for payment were thus efforts to maintain and continue the lien

12 on Thomas' vehicle.

13     As such, these actions were exempt from the automatic stay pursuant to section 11 U.S.C. §

14 362(b)(3). The Bankruptcy Court's holding to that effect is AFFIRMED.

15 **IV.    Whether Governmental Agencies Violated 11 U.S.C. § 525**

16     In his brief before this Court, Thomas raises for the first time the question of whether the

17 governmental agencies' actions violated the non-discrimination provision of the Bankruptcy Code.

18 Section 525(a) of the Bankruptcy Code provides that "a governmental unit may not deny, revoke,

19 suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition

20 such a grant to, discriminate with respect to such a grant against . . . a person that is or has been a

21 debtor under this title or a bankrupt or a debtor under the Bankruptcy Act." This section "evolved

22 from *Perez v. Campbell*, 402 U.S. 637 (1971), a seminal bankruptcy case in which the Supreme

23 Court struck down a state statute that withheld driving privileges from debtors who failed to satisfy

24 motor-vehicle-related tort judgments against them, even if the judgments were discharged under

25 bankruptcy law." *In re Stoltz*, 315 F.3d 80, 87 (2d Cir. 2002). Thomas contends that Section 525(a)

26 was violated when Appellees denied his application for a residential parking permit and prevented

27 him from registering his vehicle on account of prepetition debts.

28     A district court has the power to consider any issue presented by the record on an appeal of a

12

United States District Court
For the Northern District of California

1  bankruptcy matter, even if the issue was not presented to the Bankruptcy Court. *Matter of Pizza of*

2  *Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985). Whether Section 525 was violated is in the

3  record before this Court, as it was raised by the City in its opposition brief to Thomas' original

4  motion before the Bankruptcy Court. *See* Record at 158-59. Therefore, the issue is properly before

5  the Court.

6      However, the Bankruptcy Court did not make factual findings or otherwise rule on the

7  question of whether the City's denial of Thomas' neighborhood residential parking permit and the

8  State's refusal to renew his vehicle's registration without payment of the prepetition debts violated

9  the non-discrimination provision. Whether the City and State's actions were discriminatory in

10  violation of Section 525(a) is at least in part a factual question. Therefore, this Court would benefit

11  from the Bankruptcy Court's determination in the first instance as to whether Section 525(a) applies.

12  *See In re Hall, Bayoutree Associates, Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991) (holding that the

13  district court should not make its own factual findings). *See also* Fed. R. Bankr. Proc. 8013

14  (providing that on appeal, the district court may remand for further proceedings). Accordingly, this

15  matter is remanded to the Bankruptcy Court for consideration of whether Section 525(a) applies.

16                              **CONCLUSION**

17      IT IS HEREBY ORDERED THAT the Bankruptcy Court's denial of Thomas' motion for

18  sanctions for violation of the automatic stay on the grounds that Appellees' actions fell within the

19  "police and regulatory powers" exception of section 362(b)(4) and the "perfection of a lien"

20  exception of section 362(b)(3) is AFFIRMED.

21      IT IS FURTHER ORDERED THAT the question of whether Appellees violated 11 U.S.C. §

22  525(a) by denying Thomas' permit and registration applications is REMANDED to the Bankruptcy

23  Court for further proceedings.

24      IT IS SO ORDERED.

25

26

27  Dated: _11/13/06

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

28

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

14