

**Signed and Filed: April 05, 2007**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re
ROBERT C. THOMAS,
    Debtor.

Case No. 05-31615
Chapter 13

**MEMORANDUM DECISION REGARDING DISCRIMINATION
FOR NON-PAYMENT OF DISCHARGEABLE PARKING TICKETS**[1]

    For the reasons set forth below the court will direct the Department of Motor Vehicles ("DMV") and the City and County of San Francisco ("CCSF") to permit debtor Robert C. Thomas ("Debtor") to register his vehicle and obtain a residential parking permit, provided that Debtor pays post-petition street sweeping citations and similar charges, and provided further that Debtor remains eligible for a discharge of his pre-petition debts

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052 (incorporating by reference Fed. R. Civ. P. 52(a)). Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, because this case was filed before its effective date (generally October 17, 2005).

-1-

to DMV and CCSF. The court will also enjoin CCSF, DMV, and the California Franchise Tax Board ("FTB") (collectively, the "Governments") from attempting to collect post-petition citations for non-registration of Debtor's vehicle, parking without a residential parking permit, or other charges that are proximately caused by their impermissible discrimination for nonpayment of pre-petition debts. The court will deny Debtor's requests for damages.

I. Background

Debtor, who owns a 1973 Chevrolet, had at least seventeen unpaid parking citations when he filed his Chapter 13 petition on May 23, 2005 (the "Petition Date"). Any remaining debt on account of those unpaid pre-petition citations will be discharged pursuant to Section 1328(a) when and if Debtor completes his payments under his Chapter 13 plan confirmed by the court on September 23, 2005. The dischargeability of those citations has been conceded on the record by counsel for the Governments.

In June of 2005 Debtor attempted to purchase a neighborhood parking permit from CCSF's Department of Parking and Traffic ("DPT"). That permit was denied. According to Debtor, he has to move his vehicle every two hours because he lacks a parking permit. Debtor has been cited at least twice since the Petition Date for parking in a residential zone without a residential parking permit. (Ex. A to Houlihan Decl., filed 4/28/06, docket no. 50 ("Houlihan Decl.")) On July 16, 2005, Debtor wrote to the Citation Review Center of the DPT objecting that "I was refused because of outstanding parking tickets" and noting that "DPT was

served with notice" of his Chapter 13 petition. (Ex. A to Thomas Decl., filed 3/29/06, docket no. 36 ("Thomas Decl.")) CCSF nevertheless refuses to issue a parking permit to Debtor.

On or about July 14, 2005, Debtor received a Vehicle Registration Renewal Notice from DMV. Debtor alleges, and DMV has not denied, that the normal registration fees would be $182.00 but DMV included an additional $1,600.00 for outstanding parking tickets for a total demand of $1,782.00. The total demands increased to $2,436.00 in December of 2005 and $2,956.00 in January of 2006. CCSF concedes that since Debtor is unable to re-register his vehicle with DMV he is unable to change his vehicle's address of record, which is an additional reason why he has not been able to obtain a residential parking permit. Debtor alleges that he has attempted to contact DMV by telephone but has been unable to get through to anyone who can help him. (Thomas Decl., ¶¶ 14-17 and Exs. C and J.) Debtor has been cited at least three times by DPT and once by the City of Berkeley since the Petition Date for not having vehicle registration tabs. (Houlihan Decl., Ex. A; Thomas Decl. ¶ 19-20.) Debtor wrote again to the Citation Review Center of the DPT on January 26, 2006, objecting that "I have been unable to purchase my current tabs and register my vehicle with the DMV because of a hold placed on the renewal of my vehicle by the DPT for <u>parking tickets which have been [sic] discharged in bankruptcy</u>." (Ex. H to Thomas Decl., emphasis in original.) The liability for those tickets has not yet been discharged but Debtor apparently means that his pre-petition parking ticket debts will be discharged upon completion of his Chapter 13 plan.

-3-

On March 13, 2006, FTB issued a document entitled Demand for Payment - Vehicle Registration Collections.  The document states that DMV has referred Debtor's account to FTB for collection.  It demands payment of $2,956.00, failing which FTB threatens to attach Debtor's bank account, garnish his wages, and seize and sell his personal property.  (Ex. M to Thomas Decl.)

Debtor initially asserted that the Governments were violating the automatic stay of Section 362(a).  On March 29, 2006, Debtor filed a Motion For Damages For Violation of The Automatic Stay (docket no. 34), but the court denied that motion, Debtor appealed, and the District Court affirmed as to the Section 362 issues.  The District Court also remanded to consider an issue raised by Debtor for the first time on appeal:  whether the Governments have violated Section 525(a) by denying Debtor's permit and registration applications.

The court set a status conference, the parties agreed to file simultaneous briefs, and the matter came on for hearing on March 16, 2007.  At the end of the hearing the court took the matter under advisement.

II. Discussion

Section 525(a) provides, in full:

> § 525. Protection against discriminatory treatment
>
> (a) Except as provided in the Perishable Agricultural Commodities Act, 1930, the Packers and Stockyards Act, 1921, and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943, <u>a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other</u>

-4-

<pre>
            similar grant to, condition such a grant to,
            discriminate with respect to such a grant against,
            deny employment to, terminate the employment of, or
            discriminate with respect to employment against, a
            person that is or has been a debtor under this
            title or a bankrupt or a debtor under the
            Bankruptcy Act, or another person with whom such
            bankrupt or debtor has been associated, solely
            because such bankrupt or debtor is or has been a
            debtor under this title or a bankrupt or debtor
            under the Bankruptcy Act, has been insolvent before
            the commencement of the case under this title, or
            during the case but before the debtor is granted or
            denied a discharge, or has not paid a debt that is
            dischargeable in the case under this title or that
            was discharged under the Bankruptcy Act.
</pre>

11 U.S.C. § 525(a) (emphasis added).

The Governments argue that their refusal to register Debtor's car or grant him a residential parking permit is not "solely" because of his non-payment of dischargeable debts. They claim that Debtor is a parking scofflaw and that they acted as they did to deter illegal parking. According to DMV and FTB, the District Court has "in effect" already held that Debtor's non-payment is not "alone" the proximate cause because it held (as did this court) that they were validly exercising police and regulatory powers for purposes of Section 362(b)(4). (DMV and FTB brief, docket no. 78, p.4:24-28.) CCSF also argues that Debtor has the alternative of performing community service to satisfy his citations, so he could have obtained his registration and parking permit without paying the dischargeable debts.

The court is not persuaded. First, if the District Court had already effectively decided the issue then it would not have remanded. Second, the words and purposes of Section 362(b)(4) and Section 525(a) are entirely different and the Supreme court has interpreted the word "solely" in Section 525(a) to mean proximate

-5-

cause or triggering event:

> Section 525 means nothing more or less than that the failure to pay a dischargeable debt must alone be the <u>proximate cause</u> of the [government's action or refusal to act] -- the act or event that <u>triggers</u> the agency's decision . . ., whatever the agency's ultimate motive in pulling the trigger may be.

F.C.C. v. NextWave Personal Communications Inc., 537 U.S. 293, 301-02 (2003) (emphasis added).

The Governments' attorneys conceded at oral argument that if Debtor were to pay their demands then they would issue his registration and parking permit, even if Debtor is an unrehabilitated scofflaw. Payment is the trigger. Debtor has established proximate causation.

The Governments cite In re Kimsey, 263 B.R. 244 (Bankr. E.D. Ark. 2001), but in that case the debtor pleaded guilty to "driving without a driver's license, unsafe driving, failing to have proof of liability insurance (and, in a subsequent year, failing to have liability insurance), leaving the scene of an accident, driving on a suspended license, and failing to yield the right of way." Id. at 246. The debtor in Kimsey alleged that the refusal to reinstate his license was for financial reasons, but the court found "no evidence" that the government "has in fact taken any action to collect the debt." Id. Instead it found that "the City is not refusing to reinstate the debtor's license because of his bankruptcy filing, but, rather, seeks to enforce the traffic laws which permit termination of the driving privilege based upon violations of the law." Id. at 247.

The Governments cite cases involving what are called financial responsibility laws for motor vehicle drivers. Those

-6-

laws do not require drivers to maintain insurance unless they have been in an accident resulting in an unpaid judgment. Such laws have been held not to violate Section 525(a). See, e.g., Duffey v. Dollison, 734 F.2d 265 (6th Cir. 1984). Duffey, however, held that the statute at issue "neither provides creditors 'leverage for the collection of damages,' nor under the facts here does it coerce bankrupts into reaffirming discharged debts. Perez v. Campbell, 402 U.S. 637 [1971]." Duffey, 734 F.2d at 272. In contrast refusing to register Debtor's vehicle and denying him a parking permit both directly coerce his payment of dischargeable debts.

The other cases cited by the Governments are similarly distinguishable, unpersuasive, and mostly decided before NextWave. See, e.g., In re Norton, 867 F.2d 313, 317 n.8 (6th Cir. 1989) (every driver found to be financially irresponsible, whether bankrupt or not, must pay $65 license restoration fee, and "It is certainly within the legislature's discretion to shift the costs of the program to those drivers who make such a program necessary."); In re Geiger, 143 B.R. 30 (E.D. Pa. 1992) (Section 525(a) does not bar payment of $25 license restoration fee).

The Governments also argue that their refusals to register Debtor's car and issue a parking permit are justified because Debtor has post-petition citations that were not caused by non-payment of pre-petition debts. It is true that Debtor has post-petition street sweeping citations but his brief clearly states (docket no. 75, p. 2:21-24), "The debtor makes no claim that the Bankruptcy Code protects him from post petition fines or penalties that do not have their basis in lack of a permit or valid

-7-

registration." Debtor's counsel conceded at oral argument that Debtor must pay these citations even if the court agrees with Debtor on the Section 525(a) issues. Moreover, the Governments provide no evidence that they ever told Debtor they would accept anything less than full payment, including payment of all dischargeable debts. FTB's demand even warns, "Partial payment will not stop collection action; you must pay the full amount due." (Ex. M to Thomas Decl.)

The Governments also suggest that it would be unfair to require them to issue a registration and parking permit when Debtor has not yet completed his Chapter 13 plan and therefore has not yet discharged his pre-petition debts. That argument is not persuasive because the statute clearly refers to "dischargeable" debts, not "discharged" debts. In fact, NextWave involved a Chapter 11 plan of reorganization that had yet to be confirmed so there was no discharge when that case was decided but, as the Supreme Court noted, the debts at issue were dischargeable. NextWave, 537 U.S. at 298-99 and 303. One case cited by Debtor offers an even-handed means of implementing the statute:

> [The debtor] is entitled to a renewal license during the pendency of her Chapter 13 case, and discharge of her obligations upon completion of the payments provided for in her Chapter 13 plan. Should [the debtor] convert to a liquidation case under Chapter 7 of the Code, the obligation for the traffic fine would not be dischargeable,[2] and the Department of Motor Vehicles would be justified in revoking [the debtor's] license. Likewise if [the debtor] receives a hardship discharge under the provisions of section 1328(b), the Department could

---

[2] The court expresses no opinion whether in circumstances of this particular case Debtor's citations would be nondischargeable if his case were converted to Chapter 7.

-8-

revoke [the debtor's] license.
In re Young, 10 B.R. 17, 19 (Bankr. S.D. Cal. 1980).

The court adopts a similar approach to that taken by Young. Debtor is presently entitled to renewal of his registration by DMV and issuance of a parking permit from CCSF, without waiting for his actual discharge under Section 1328(a), on two conditions. First, if Debtor's case is dismissed or if for any other reason the pre-petition citations cease to be dischargeable then by its terms Section 525(a) will not apply thereafter and the Governments can refuse to issue or can revoke their licenses or permits. Second, Debtor will have to pay any post-petition obligations, such as street sweeping citations, that were not proximately caused by his non-payment of dischargeable debts. Among the charges that Debtor should not have to pay are any interest and late payment fees, even as to street sweeping citations, because any such interest and fees were proximately caused by the Governments' refusal to issue a registration or parking permit without payment in full, including payment of dischargeable debts.

Debtor asks that, in addition to renewal of his registration and issuance of a parking permit, the court should void all post-petition fines incurred because he did not have a registration or parking permit, or else should award money damages equal to the fines "to the extent that the fines may have been issued by entities not before the court." (Debtor's brief, docket no. 75, p. 5:8-9.) Debtor also seeks an award of attorneys' fees based on Section 105(a).

The court denies Debtor's request to void any fines, assuming without deciding that the court could do so. It is true that

-9-

collection of some post-petition fines would be incompatible with Section 525(a) -- for example, CCSF should have issued Debtor a parking permit without requiring him to pay dischargeable pre-petition debts and therefore DPT should not have fined Debtor for parking in front of his home without a permit. Nevertheless, it is not clear that the fines are a nullity. If Debtor dismisses his Chapter 13 case, for example, the court may be asked to consider whether the fines remain uncollectible because the violation of Section 525(a) already occurred or if instead the fines can be collected because the pre-petition debts are no longer dischargeable. The court expresses no opinion on this issue, which can be raised when and if it is relevant.

Meanwhile injunctive relief is appropriate to preclude the Governments from attempting to collect fines or other debts that only arose because the Governments would not issue permits or licenses in violation of Section 525(a). The court will use its powers under Section 105(a) to enjoin the Governments from attempting to collect post-petition debts[3] proximately caused by Debtor's non-registration and lack of a parking permit, including interest and late fees. See In re Exquisito Services, Inc., 823 F.2d 151, 155 (5th Cir. 1987) (authority under Section 105 to direct Air Force to order contract with debtor renewed).[4]

---

[3] The Governments are already prohibited from attempting to collect pre-petition debts from Debtor personally or from property that has revested in him, pursuant to Section 362(c)(2), the confirmed Chapter 13 plan (¶ 6, docket no. 19), and Section 1327(c).

[4] The court recognizes that an adversary proceeding is generally required for issuance of an injunction, other equitable relief, or certain declaratory judgments and that no such

-10-

The court denies Debtor's request for damages. Most of Debtor's alleged damages consist of attorneys' fees and "Section 525 of the Bankruptcy Code does not authorize attorney fees to a prevailing litigant . . . ." In re McKibben, 233 B.R. 378, 386 (Bankr. E.D. Tex. 1999). The only authority cited by Debtor in support of an award of attorneys fees involved a "sanction for ordinary civil contempt" in a case involving "egregious facts." Havelock v. Taxel, 67 F.3d 187, 193-94 (9th Cir. 1995). This is not a similar case. Debtor's remaining alleged damages consist of fines that "may" have been issued by entities not before the court, which might or might not mean the parking ticket he received from the City of Berkeley. (Debtor's brief, docket no. 75, p.5:8-9.) The court lacks jurisdiction over entities that are not before it; Debtor has provided no evidence of the dollar amount of these alleged damages; it is not clear why the Governments should pay for acts of other entities who are not before the court; and there is no evidence that Debtor mitigated his damages by contesting liability and citing Section 525(a) to

---

adversary proceeding has been commenced in this case. See Fed. R. Bankr. P. 7001(7) and (9). Nevertheless, the court treats this procedural defect as having been waived in the circumstances of this case. The Governments did not raise this issue in their briefs or in oral argument before the court and there is no apparent prejudice. See also In re Cox, 68 B.R. 788, 803 (Bankr. D. Or. 1987) (waiver of need for adversary proceeding when, among other things, "the parties stipulated to all facts; thus the procedural provisions incorporated by Bankruptcy Rule 7001 for the parties' protection, were here not required" and "both parties, recognizing the legal importance and complexity of the issues raised, allowed themselves sufficient time for legal research and briefing"). Cf. In re Munoz, 287 B.R. 546, 551 (9th Cir. BAP 2002) (error to determine scope of discharge under Section 524 without adversary proceeding, but error was harmless when record was sufficiently developed not to affect substantial rights of parties or be inconsistent with substantial justice).

-11-

the City of Berkeley (or other entity).  See In re Oksentowicz, 324 B.R. 628, 630-31 (Bankr. E.D. Mich. 2005) (duty to warn of Section 525 violation and provide opportunity to cure). Therefore, assuming without deciding that damages could be awarded under Section 525(a), the court declines to award any.

III. Conclusion

    The court will issue orders directing DMV to register Debtor's vehicle and CCSF to issue him a residential parking permit upon his payment of the normal fees and any post-petition obligations, such as street sweeping citations, that were not proximately caused by his non-payment of dischargeable pre-petition debts.  Such orders will no longer apply, and the Governments may refuse to issue or may revoke any licenses or permits, if Debtor ceases to be eligible for a discharge of his pre-petition debts.

    The court will also enjoin the Governments from collecting any post-petition debts that were proximately caused by Debtor's non-payment of dischargeable pre-petition debts, such as citations for parking without registration tags or a residential parking permit.  Such injunctions will be without prejudice to the Governments seeking relief in the event that Debtor's Chapter 13 case is dismissed or the pre-petition debts become nondischargeable for any other reason.

\* END OF MEMORANDUM DECISION \*

-12-

Case: 05-31615    Doc# 82    Filed: 04/05/07    Entered: 04/06/07 11:52:33    Page 12 of 13

COURT SERVICE LIST

John I. Kennedy, Esq.
Deputy City Attorney, CCSF
1390 Market St., 5th Floor
San Francisco, CA  94102-5408

Kristian D. Whitten, Esq.
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA  94102-7004

Benjamin F. Bucceri, Jr., Esq.           Courtesy copy
Department of Motor Vehicles
Legal Office, E-128
P.O. Box 932382
Sacramento, CA  94237-3820

Carissa Lynch, Esq.                       Courtesy copy
Franchise Tax Board
P.O. Box 1720, MS A-260
Rancho Cordova, CA  95741-1720

(<u>Note to parties</u>:  Persons who are registered with the court's electronic filing system will receive email notification of the entry of this order so their names may not appear on the above service list, which is used for service via U.S. mail.)

Case: 05-31615    Doc# 82    Filed: 04/05/07    Entered: 04/06/07 11:52:33    Page 13 of 13